IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| J.B. by and through his next friends<br>KEVIN and LAURIE BAILEY, | )<br>)<br>) |
| and | )<br>) |
| KEVIN BAILEY and LAURIE BAILEY,<br>individually, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 09-5099-CV-SW-SWH<br>)<br>) |
| v. | )<br>) |
| AVILLA R-XIII SCHOOL DISTRICT, | )<br>) |
| Defendant. | ) |

ORDER

Pending before this Court is Avilla R-XIII School District's (hereafter "Avilla") Motion for Summary Judgment. (Doc. #64) For the following reasons, Avilla's motion is granted.

I. BACKGROUND

J.B., a minor, receives special educational services from the Avilla School District because of his diagnosis of Aperts Syndrome, which causes problems with his growth plates affecting his hands, feet and cranium. (Doc. #26 ¶12) J.B. and Kevin and Laurie Bailey, his court appointed guardians, sued the school district pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq., and Title II of the Americans with Disabilities Act (hereafter "ADA") of 1990, 42 U.S.C. 12131 et seq. (Doc. #26) Count I of the First Amended Complaint brought by and on behalf of J.B. alleges in part:

> 20. Avilla failed to provide J.B. with necessary devices to assist him in writing; and has failed to provide him with other necessary accommodation to allow him access to the same education as Avilla provided to J.B.'s non disabled

> peers.
> 21. Avilla failed to have in place a proper grievance policy for resolving disability discrimination complaints as required by §504 and the ADA.
> 22. Therefore, Avilla violated J.B.'s §504 [sic] and the ADA by discriminating against J.B. because of his disability.
> 23. J.B. has been damaged because Avilla failed to provide the educational services that he was entitled to receive.

(Doc. # 26 ¶¶20-23) Plaintiffs allege these actions violated the Rehabilitation Act as well as the ADA by discriminating against J.B. because of his disability. Plaintiff seeks an order directing Avilla to provide J.B.'s "compensatory education," monetary damages, fees and costs. (Doc. #26 at 4)

> Count II brought by Kevin and Laurie Bailey alleges, in part, that
>
> 28. Kevin and Laurie have paid for educational materials for J.B. that Avilla failed and refused to provide.
> 29. Further, Avilla is required to provide said educational materials at no cost to Kevin and Laurie.
> 30. In addition, Kevin and Laurie will be paying for compensatory educational services for J.B. because Avilla failed and refused to provide same.
> 31. Further, Avilla is required to provide said compensatory educational services at no cost to J.B., Kevin and Laurie.

(Doc. #26 ¶¶ 28-31) Kevin and Laurie Bailey seek compensation for financial losses, as well as attorney's fees and costs pursuant to the Rehabilitation Act and the ADA. (Doc. #26 at 5)

In support of its motion for summary judgment, Avilla argues that it is entitled to a judgment in its favor because Plaintiffs failed to exhaust administrative remedies; Kevin and Laurie Bailey have no standing to pursue a claim individually under the ADA or §504 of the Rehabilitation Act; and the uncontroverted facts show that Avilla did not discriminate against J.B. on the basis of his disability. (Doc. #65 at 9-23).

Plaintiffs counter that because Avilla has a policy contrary to the ADA and Rehabilitation Act, exhaustion of administrative remedies was not required. (Doc. #72 at 9-15) Further, Plaintiffs

2

contend that their claims have been properly pled and that Kevin and Laurie Bailey have standing even though they are not disabled. (Doc. #72 at 17-20) Finally, Plaintiffs deny that summary judgment would be appropriate for the reason that J.B. has shown that Avilla discriminated against him by acting in bad faith and with gross misjudgments in failing to provide him with reasonable accommodations. (Doc. #72 at 16-17)

## II. APPLICABLE LEGAL STANDARDS

The first issue before the Court is the applicable legal standard. Defendant's motion is styled "Motion for Summary Judgment." However, the suggestions in support of the motion are styled "Defendant Avilla R-III School District's Memorandum in Support of its Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment." (See doc. # 65 at 1) Although setting forth allegedly undisputed facts, the memorandum also includes a discussion of the legal standard by which the court may grant a motion for judgment on the pleadings.[1] Given that the motion is for summary judgment and that the arguments of both Plaintiffs and Defendant refer to factual issues outside the pleadings, the Court will consider the issues pursuant to the summary judgment standard.

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party has the burden of showing that there is no genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514,

---

[1] A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim. Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009), *cert. denied*, __ U.S. __, 130 S.Ct. 3507, 177 L.Ed.2d 1092 (2010). Thus, the court views "all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008).

3

91 L.Ed.2d 202 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. In determining whether a fact is material, courts must determine what facts under the substantive claim are necessary to sustain the cause of action. Anderson, 477 U.S. at 248.

If the moving party has met their initial burden, then the burden shifts to the nonmoving party to produce specific evidence to demonstrate the existence of a "genuine issue for trial." Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." Mirax Chem. Products Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

### III. DEFENDANT'S UNCONTROVERTED FACTS[2]

1. Defendant Avilla R-XIII School District (hereafter "Avilla") is a public K-8 school district located in Jasper County, Missouri. (Defendant's Uncontroverted Fact (hereafter "DUF") #1)

2. J.B. has a medical diagnosis of Aperts Syndrome, a condition which affects the growth plates in his hands, feet and cranium. (DUF #2)

3. J.B. is a student with a disability in need of special education and/or related services as defined by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. (hereafter "IDEA"). (DUF #3)

---

[2]The following facts were admitted by the plaintiffs.

4.  J.B. was enrolled at Avilla from January 2003 until May 2010. (DUF #4)

5.  Prior to residing within Avilla's boundaries, J.B. and his parents, Plaintiffs Kevin and Laurie Bailey, resided in the Jefferson Park School District in El Paso, Illinois. (DUF #5)

6.  During J.B.'s brief enrollment, the Jefferson Park School District evaluated Plaintiff J.B. to determine whether he was eligible for and required special education and/or related services under the IDEA. The Jefferson Park School District determined that Plaintiff J.B. was eligible for special education and/or related services pursuant to the IDEA. (DUF #6)

7.  On April 26, 2002, the Jefferson Park School District convened an individualized education program ("IEP") team, including Kevin and Laurie Bailey, to develop an IEP to meet J.B.'s needs. (DUF #7)

8.  On October 9, 2002, J.B.'s Jefferson Park School District IEP team, including Kevin and Laurie Bailey, convened to review and, as appropriate, revise J.B.'s IEP. The October 9, 2002 IEP was the last IEP developed for J.B. by the Jefferson Park School District. (DUF #8)

9.  On December 12, 2002, Plaintiffs Kevin and Laurie Bailey filed a Student Transfer Form with the Illinois State Board of Education because they were moving, with J.B., to Reeds, Missouri, a town located within the boundaries of the Avilla School District. (DUF #9)

10. On January 2, 2003, Plaintiffs Kevin and Laurie Bailey enrolled J.B. at Avilla. (DUF #10)

11. Upon J.B's enrollment at Avilla as a student requiring special education and/or related services, the District convened an IEP team, which included Kevin and Laurie Bailey, on or about January 14, 2003 to review J.B's Jefferson Park School District IEP, consider J.B.'s current needs and develop an IEP. (DUF #11)

12. On or about January 14, 2003, Avilla sent a Notice of Action to Kevin and Laurie Bailey indicating that J.B.'s IEP team accepted and adopted the Jefferson Park School District IEP and evaluation report. (DUF #12)

13. On April 8, 2003, J.B.'s IEP team convened to review evaluation data that had been collected during J.B.'s first grade year. (DUF #13)

14. On September 3, 2004, following the acceptance of the Jefferson Park School District IEP, J.B.'s IEP team, including Kevin and Laurie Bailey, met to review and revise J.B.'s IEP as needed. (DUF #14)

5

15. On or about February 16, 2005, Plaintiffs received and returned a Notice of Action which specified that Plaintiff J.B. was to receive an assistive technology evaluation. (DUF #15)

16. On or about March 11, 2005, Plaintiff J.B. was evaluated by the Missouri Rehabilitation Center – Assistive Technology Assessment Center and a report regarding Plaintiff J.B.'s need for assistive technology was issued on or about March 16, 2005. (DUF #16)

17. On April 25, 2005, Avilla purchased various assistive technologies including: the Intellikeys adaptive keyboard, an adaptive computer mouse, the WordQ program as well as the Read and Write Gold program, all of which had been recommended in the March 16, 2005 Missouri Rehabilitation Center report. (DUF #17)

18. On August 11, 2005, Plaintiff J.B.'s IEP team, including Kevin and Laurie Bailey, convened to review and revise J.B.'s IEP. The IEP team noted that J.B. required assistive technology for his motor skills. (DUF #18)

19. On January 24, 2006, J.B.'s IEP team, including Kevin and Laurie Bailey, convened to discuss the use of assistive technology and the creation of goals for said assistive technology. (DUF #19)

20. On, or about, January 24, 2006, Plaintiffs Kevin and Laurie Bailey were provided with a copy of IDEA Procedural Safeguards.[3] (DUF #20 & Plaintiff's Response to DUF #20)

21. On, or about, January 4, 2006, Plaintiffs Kevin and Laurie Bailey were provided with a Notice of Action which indicated that J.B. would be provided with computer

---

[3] Plaintiffs have admitted that they were provided a copy of the IDEA Procedural Safeguards on or about January 24, 2006, but deny the remainder of DUF #20. In so doing, Plaintiffs argue that the fact is illusory and is not an accurate statement of the events. Plaintiffs then cite generally to over 40 pages of documents (which include a report and a resolution agreement) with no specific page numbers identified in an effort to contradict Defendant's fact. Rule 56(c) of the Federal Rules of Civil Procedure requires parties to cite to "particular parts of materials in the record . . . ." By citing generally to over 40 pages of documents, Plaintiffs have failed to conform to Rule 56(c). Furthermore, it is unclear exactly what Plaintiffs are denying as they have admitted to the substance of the factual statement. Plaintiffs similarly deny DUFs #21, 26, 32, & 36 and have failed to properly cite to particular parts of the material which they are relying on to contradict these facts. Furthermore, Plaintiffs have admitted the substance of those facts. Therefore, this Court finds that the cited facts (DUF #20, 21, 26, 32 & 36) are uncontroverted.

classes to learn the assistive technology programs Avilla had purchased for him.[4] (DUF #21 & Plaintiff's Response to DUF #21)

22. Plaintiff J.B.'s IEP team, including Kevin and Laurie Bailey, reconvened on August 11, 2006, and April 5, 2007, to review and revise J.B's IEP. (DUF #22)

23. On April 10, 2007, Avilla mailed Plaintiffs Kevin and Laurie Bailey a Notice of Action which indicated that J.B. would undergo additional evaluation, including an assistive technology evaluation. (DUF #23)

24. On August 31, 2007, October 31, 2007, August 25, 2008 and October 21, 2008, Plaintiff J.B.'s IEP team, including Kevin and Laurie Bailey, convened to review and revise J.B.'s IEP. (DUF #24)

25. On December 19, 2008, J.B.'s IEP team, including Kevin and Laurie Bailey, reconvened to review and revise J.B.'s IEP. The team determined J.B. required specialized instruction in assistive technology. (DUF #25)

26. On, or about, January 12, 2009, Avilla sent to Plaintiffs Kevin and Laurie Bailey a Notice of Action indicating J.B. would receive additional services to address his assistive technology needs.[5] (DUF #26)

27. On February 2, 2009, Plaintiffs Kevin and Laurie Bailey sent Avilla a letter stating they disagreed with the District's previous speech evaluation which had been completed in May 2008. Plaintiffs demanded the District provide an Independent Education Evaluation at public expense. (DUF #27)

28. On February 4, 2009, Plaintiffs Kevin and Laurie Bailey sent Avilla a letter requesting numerous changes to J.B.'s December 19, 2008 IEP.[6] (DUF #28)

---

[4] See footnote 3, *supra*. Furthermore, Plaintiffs argue that "Avilla did not allow J.B. to use the technology and failed to train on its use." (Doc. #72 ¶21) This Court has reviewed the document entitled Notice of Action cited by Defendant in support of the factual statement and finds that the factual statement accurately describes the content of the Notice of Action.

[5] See footnote 3, *supra*.

[6] Plaintiffs have admitted that they sent a letter on February 4, 2009, but object to the conclusions and legal conclusions set forth in the remainder of the fact pattern. Plaintiffs further argue that the factual statement is beyond the scope of Rule 36 of the Federal Rules of Evidence. This Court has read the document and finds that the defendant's factual statement accurately states the contents of the letter. Furthermore, the cited material by Plaintiffs do not contradict the factual statement. Therefore, this Court finds that the factual statement is uncontroverted.

7

29. On March 9, 2009 and September 8, 2009, J.B.'s IEP team, including Kevin and Laurie Bailey, convened to review and revise his IEP. (DUF #29)

30. Plaintiffs Kevin and Laurie Bailey participated fully in each of J.B.'s IEP team meetings, expressing their concerns, opinions, and requesting revisions to J.B.'s IEPs. Kevin and Laurie Bailey felt they were able to participate fully in any IEP meeting. (DUF #30)

31. Plaintiffs Kevin and Laurie Bailey were provided with a Notice of Action after each of J.B.'s IEP team meetings which specified any proposed or requested actions taken or refused to be taken by the IEP team. (DUF #31)

32. Plaintiffs Kevin and Laurie Bailey were provided with a copy of IDEA's Procedural Safeguards at every IEP team meeting. Kevin and Laurie Bailey reviewed the IDEA Procedural Safeguards and were familiar with the protections and procedures contained within the Procedural Safeguards.[7] (DUF #32)

33. On or about November 19, 2007, Plaintiffs Kevin and Laurie Bailey met with Avilla administrators, Lola Rector and Laura Green. At that meeting, Kevin Bailey stated to Ms. Rector and Ms. Green "either provide services or go to due process."[8] (DUF #33 & Plaintiff's Response to DUF #33)

34. On October 21, 2008, Plaintiffs Kevin and Laurie Bailey sent Avilla officials a letter articulating their rights under the IDEA and the Missouri State Plan for Special Education. (DUF #34)

35. Plaintiffs Kevin and Laurie Bailey were and are familiar with the Due Process Complaint Procedures contained within the IDEA Procedural Safeguards, and have in fact, filed an IDEA Due Process Complaint with the Missouri Department of Elementary and Secondary Education ("DESE") prior to their filing suit in the instant matter.[9] (DUF #35)

36. J.B., Kevin and Laurie Baileys' claims are based on Avilla's alleged failure to provide J.B. with a free, appropriate public education ("FAPE") by failing to provide

---

[7] See footnote 3, *supra*.

[8] Plaintiff's have denied DUF #33 and have cited to portions of the deposition of Kevin Bailey. Nothing in the cited portions of the Kevin Bailey deposition contravenes the material cited by Defendant in support of DUF #33. Therefore, this Court finds that DUF #33 is uncontroverted.

[9] The prior complaint, filed in 2007, related to a lack of speech services. See Exh. 2, Attachment A-29.

J.B. with assistive technology and failing to implement his IEP.[10] (DUF #36)

IV. DISCUSSION

A. Exhaustion of Administrative Remedies

1. Exhaustion of Administrative Remedies Under the IDEA

While Plaintiffs chose to sue under the Rehabilitation Act and the ADA, a third statutory enactment, the Individuals with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.* (hereafter "IDEA"), must also be considered. Courts have generally noted that section 504 of the Rehabilitation Act, the IDEA and the ADA all provide similar protections for a disabled student:

> The IDEA and Section 504 of the Rehabilitation Act provide nearly equivalent requirements. The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled. "There appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." Similarly, the ADA also prohibits discrimination against the disabled. Like Section 504, ADA claims can be based on the discriminatory effect on disabled children of seemingly neutral practices and do not require a finding of intentional discrimination.

Swope v. Central York School District, 2011 WL 2471518, at *3 (M.D. Pa. 2011) (citations omitted).

In discussing the IDEA, the Eighth Circuit explained that:

> The IDEA provides access to a free appropriate public education (FAPE)-a "basic floor of opportunity" so that a child with disabilities has access to an individually designed education. See Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1372 (8th Cir.1996), citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 201, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); see also 20 U.S.C. §§ 1400(d)(1)(A), 1401(9).

Stringer v. St. James R-1 School Dist., 446 F. 3d 799, 802-803 (8th Cir. 2006). In providing a free

---

[10] See footnote 3, *supra*.

appropriate public education (herafter "FAPE"), school districts are required to design and implement an individualized educational program (hereafter "IEP") for each student with a disability. 20 U.S.C. § 1414(d). The IEP is a "'comprehensive statement of the educational needs of [the] handicapped child and the specially designed instruction and related services to be employed to meet those needs.'" C.B. ex rel. B.B. v. Special School Dist. No. 1, 636 F.3d 981, 989 (8th Cir. 2011) (quoting School Committee of Burlington v. Department of Education, 471 U.S. 359, 368,105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985)).

Citing section 1415(l) of the IDEA, Defendant argues that even though Plaintiffs have chosen to sue under Section 504 of the Rehabilitation Act and the ADA, they must exhaust the administrative remedies provided by the IDEA since the complaint raises issues concerning whether J.B. received a FAPE. That section of the IDEA setting forth the requirement that administrative remedies must be exhausted before filing suit provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*[11]

20 U.S.C. §1415(l) (emphasis added). Courts that have considered section 1415(l) have found that the IDEA's exhaustion requirement applies equally to relief available under other statutes, such as

---

[11] 20 U.SC. §1415(f) sets forth detailed requirements for a due process hearing when a complaint has been made concerning the provision of a free appropriate education under subsections (b)(6) and (k) of the IDEA. 20 U.SC. §1415(g) explains that if the due process hearing is conducted by a local educational agency any party aggrieved by the findings and decision may appeal to the State educational agency.

10

the ADA and the Rehabilitation Act, if the relief sought under those statutes would also be available under the IDEA. See Payne v. Peninsula School Dist., 653 F.3d 863, 875 (9th Cir. 2011)(courts should look at the complaint's prayer for relief and determine whether the relief sought is also available under the IDEA); Kutasi v. Las Virgenes Unified School Dist., 494 F.3d 1162, 1163 (9th Cir. 2007) ("We reaffirm the principle that plaintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures."). As the Ninth Circuit explained, section 1415(l) requires exhaustion in three situations: (1) when a plaintiff seeks an IDEA remedy or its functional equivalent; (2) when a plaintiff seeks a prospective injunctive relief to alter an IEP or the educational placement; and (3) where a plaintiff is seeking to enforce rights that arise as a result of a denial of a FAPE whether pled as an IDEA claim or under another statutory provision. Payne, 653 F 3d at 875.

    2.    Do Plaintiffs' Complaints Relate to a FAPE?

Plaintiffs argue that their claim is that Avilla failed to protect J.B. from unlawful discrimination, a claim wholly unrelated to the IEP process under the IDEA. (Doc. #72 at 13-15; doc. #26 ¶17) In the complaint, J.B. contends that Avilla failed to provide the necessary accommodation to allow him access to the same education as Avilla provided to J.B.'s non disabled peers[,]" including failing to provide necessary devices to aid in his writing. (Doc. #26 ¶20) He further alleges that "Avilla failed to have in place a proper grievance policy for resolving disability discrimination complaints as required by [the Rehabilitation Act] and the ADA." (Doc. #26 ¶21) J.B. asks the Court to "[o]rder Avilla to provide J.B. compensatory education" and award monetary damages caused by the violation of his rights under the Rehabilitation Act and the ADA. (Doc. #26

11

at 4)

As discussed earlier, the IDEA requires that the school district have in place an IEP for a child with a disability at the start of each school year. 20 U.S.C. §1414(d)(2)(A). An IEP includes, among other things, "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child . . . ." 20 U.S.C. §1414(d)(1)(A)(i)(IV). The allegations by J.B. concerning failure to provide the necessary accommodations and devices are exactly the type of issues addressed in an IEP. Thus, Plaintiffs are mistaken in their assertion that their claims are wholly unrelated to the IEP process. In fact, the Baileys' own actions and deposition testimony belie their assertion. On February 2, 2009, the Baileys sent a letter to Avilla requesting changes to the December 19, 2008 IEP, including changes to how the assistive technology was utilized. (Uncontroverted Fact #28, *supra*; Defendant's Exhibit #2 A25) Thereafter, the IEP team met and revised the IEP on two different occasions. (Uncontroverted Fact #29, *supra*) In his deposition Kevin Bailey responded in the affirmative when asked whether it was his "belief that the failure of Avilla to provide these devices, the assistive technology, and then the accommodations, the training to use the assistive technology, and then the implementation in the classroom, denied J.B. a Free Appropriate Public Education?" (Doc. #65-4 at 21:3-9) He further stated that Avilla's failure constituted discrimination against J.B. (Doc. #65-4 at 21:10-15, 21:21-25 to 22:1; 34:3-25 to 35:1-2; 36:2-9; Doc. #65-5 at 49:18-25 to 50:1-3, 50:21-25 to 51:1-5) This Court, therefore finds that J.B.'s allegations raise his ability to receive a FAPE, and he must, therefore, exhaust his administrative remedies pursuant to section §1415(l) prior to pursuing the

12

instant action.[12]

Furthermore, this Court rejects any suggestion that the Baileys' request for monetary damages for Avilla's failure to provide the necessary educational materials and services is not a cognizable claim under IDEA and therefore they are not required to exhaust administrative remedies. While the Eighth Circuit in <u>Heidemann v. Rother</u>, 84 F.3d 1021, 1033 (8th Cir. 1996), found that general and punitive damages are not available under the IDEA, the monetary damages sought by the Baileys for failure to provide necessary educational materials and services are not considered general and punitive damages. The United States Supreme Court has found that reimbursement for expenses which should have been covered under an IEP are not considered damages. <u>School Committee of Town of Burlington, Mass. v. Department of Educ. Mass.</u>, 471 U.S. 359, 371, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985) (involving the Education of the Handicapped Act, which was the foreruneer to the IDEA). Courts have determined that reimbursement for services and material that should have been provided under an IEP fall under the purview of the IDEA and thus exhaustion of administrative remedies are required in such circumstances. <u>Payne</u>, 653 F.3d at 875; <u>Polera v. Board of Educ. of Newburgh Enlarged City School Dist.</u>, 288 F.3d 478, 488 (2nd Cir. 2002). Therefore, because the Baileys' request for monetary damages relates to the

---

[12] To the extent that Plaintiffs raises a claim that Avilla failed to put into place the proper procedures for handling discrimination complaints under the Rehabilitation Act or the ADA, that allegation does not state a claim for relief. There is no independent cause of action under either the Rehabilitation Act or the ADA for failing to provide adequate procedures. <u>Cf.</u> <u>Nelson v. Greenspan</u>, 163 F.Supp.2d 12, 18 (D. D.C. 2001) (finding no independent cause of action under Title VII for mishandling a discrimination complaint); <u>see also</u> <u>Lewis v. School Dist. #70</u>, 523 F.3d 730, 744 n.9 (7th Cir. 2008) (noting that "[b]ecause [plaintiff's] complaint never alleged a due process claim or any other procedural cause of action, [the Court will] construe her intimations that the school board failed to follow the proper procedure as relevant solely to her FMLA claim, not as an independent cause of action.")

13

alleged failure of Avilla to provide educational materials, their claim could have been addressed through the administrative remedies pursuant to the IDEA and her claim is also subject to the exhaustion requirement.

### 3. Does An Exception to the Exhaustion Requirement Exist?

There are, however, limited instances where plaintiffs may be excused from exhausting administrative remedies. The exceptions to the exhaustion requirement occur when "(1) exhaustion would be futile; (2) exhaustion would fail to provide adequate relief; [or] (3) 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to law.'" Megan C. v. Independent School Dist. No. 625, 57 F.Supp.2d 776, 789 (D. Minn. 1999) (quoting Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1043-44 (10th Cir. 1993)). In the instant case, Plaintiffs assert that exhaustion was not required under the third exception because Avilla had adopted a policy that was contrary to law.

In support of their argument, Plaintiffs rely on a report created by the United States Department of Education, Office of Civil Rights (hereafter "OCR"), as well as a Resolution Agreement between OCR and Avilla, both of which were signed in December of 2007.[13] (Doc. #72-1 & 72-2) The OCR report was created in response to a complaint filed by the Baileys alleging Avilla had discriminated against J.B. on the basis of his disability. (Dof. #72-1 at 5) The report specifically addressed the Baileys' concerns regarding Avilla's failure to follow J.B.'s IEP as well the Baileys' concern regarding Avilla's grievance process for resolving disability discrimination

---

[13] Avilla has moved to strike the report arguing that it contains inadmissible hearsay. (Doc. #56) Because this Court finds the report to be irrelevant to its determination in the instant matter, Avilla's request is denied as moot.

14

complaints. (Doc. #72-1 at 5) At that time OCR found that Avilla's existing grievance procedure was inadequate for "other types of disability discrimination complaints that are not addressed by the *Procedural Safeguards Notice* [which discusses the policies and procedures in dealing with complaints about the implementation of students IEPs under the IDEA]." (Doc. #72-2 at 1)

Plaintiffs' reliance on this report is misplaced for several reasons. First, in responding to Defendant's motion for summary judgment, Plaintiffs admit to the bulk of Defendant's uncontroverted facts. (See doc. #72 at 5-8) Plaintiffs, however, provide no additional statement of facts which they claimed were uncontroverted or upon which they were relying in opposing the motion for summary judgment.[14] Despite this failure, in the argument section, Plaintiffs refer to the report issued by the OCR, the deposition of Deon Duncan as well as interrogatory answers of Avilla[15]. (See doc. #72 at 9-13, 16–17). Plaintiffs have, therefore, failed to comply with local rule 56.1(a) by failing to specifically list "material facts as to which the party contends a genuine issue exists."

Nevertheless, and more importantly, the exception relating to policies and practices that are contrary to law is rooted in the legislative history of the IDEA. Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993). As such, those policies and practices must relate to the goals of IDEA, which is to guarantee a FAPE for children with disabilities. 20

---

[14] Local Rule 56.1(a) requires that "[s]uggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists." Plaintiffs have failed to comply with this rule as their factual assertions are scattered in the body of their brief.

[15] It does not appear the interrogatories or the answers were provided to the Court as an exhibit. Local Rule 56.1(a) requires that when the facts referred to are contained in a document such as an interrogatory, the document or the relevant portion thereof must be attached to the pleading.

U.S.C. §1412(a)(1)(A). The policy identified by Plaintiffs as contrary to law relates to the procedural application of grievances filed under the Rehabilitation Act and the ADA– not the IDEA. (Doc. #72 at 10-11) The OCR document relied upon does not involve an investigation into the adequacy of the procedural safeguards contained in the IDEA and implementing regulations. (See doc. #72-2 at 1 stating that "Avilla's existing grievance procedure was inadequate for "other types of disability discrimination complaints that *are not* addressed by the *Procedural Safeguards Notice* . . . ." (emphasis added)) Instead, the report focuses on whether the policy conforms to the requirements of the Rehabilitation Act. (Doc. #72-1 at 18-22, 72-2 at 1-3) The OCR document specifically states that the OCR is responsible for enforcing Section 504 of the Rehabilitation Act and Title II of the ADA. (Doc. #72-1 at 5) Thus, the policy under investigation by the OCR, which related to the implementing regulations under the Rehabilitation Act and the ADA, has no impact on the handling of complaints under the IDEA, and provides no basis for excusing exhaustion of administrative remedies under the IDEA. Significantly, the Baileys acknowledged that on several occasions they were provided with a copy of a document entitled *Procedural Safeguards Notice, Part B of the Individuals with Disabilities Education Act (IDEA)* (See Undisputed Facts #20, 32, 35, *supra*) This document sets forth in detail the process by which a due process complaint can be filed under the IDEA and even provides access to model forms to be used in registering a complaint. (See Defendant's Exhibit #2 A13) Plaintiffs have made no claim that the policies and procedures of the IDEA as explained in the pamphlet provided to the Baileys were inadequate or contrary to law. Thus, the identified policy does not fit into the exception to the exhaustion requirement for policies and practices that are contrary to law.

Furthermore, even assuming that the policy violations found in connection with the Baileys'

16

complaints under the Rehabilitation Act and the ADA, could somehow be construed as affecting the goals established in the IDEA, the policy violation is not the type of policy that vitiates the need to exhaust remedies. In <u>Hoeft v. Tucson United School Dist.</u>, 967 F.2d 1298 (9th Cir. 1992), the Ninth Circuit thoroughly discussed the exception relating to policies and practices of general applicability that are contrary to law. The <u>Hoeft</u> Court noted that the cases that fall under this exception are cases that "involve statutory violations so serious and pervasive that basic statutory goals are threatened – violations on a qualitatively different scale than those alleged here." <u>Hoeft</u>, 967 F.2d at 1304 (the violation alleged in Hoeft was the failure to offer extended school year services to disabled students). The court went on to state that even though the plaintiffs alleged procedural violations of IDEA, such violations did not "effectively deprive[] plaintiffs of an administrative forum." <u>Hoeft</u>, 967 F.2d at 1304. Plaintiffs in the instant case have not been denied an administrative forum to hear their complaints under the IDEA. In fact, Plaintiffs recognize that the procedural process established in conformance with the IDEA was available. (Doc. #72 at 11 (noting the desire of students to have their discrimination complaint "handled internally by Avilla without the necessity of going through an outside and expensive process.")) Therefore, Plaintiffs' failure to exhaust administrative remedies is fatal to the instant action.

      B.    <u>The Baileys' Standing</u>

With regard to Avilla's contention that the Baileys lacks standing, this Court notes that there appears to be a split in the district with regard to whether parents have standing in their own right under the Rehabilitation Act and the ADA. See <u>M.W. ex rel. Williams v. Avilla R-XIII School District</u>, 2011 WL 3354933 (W.D. Mo. 2011) (finding that the parents lacked standing to pursue claims under §504 and the ADA because neither statute "contemplate[s] damage claims by

17

individuals who do not themselves have disabilities nor have suffered discrimination based on their own disabilities."); but see K.F. v. Francis Howell R-III School Dist., 2008 WL 723751, at *7 (E.D. Mo. 2008) (finding that parents have standing under §504 and the ADA because of the "the 'particular and personal' interest parents have in preventing discrimination against their child."). For the reasons stated in subsection A, *supra*, this Court need not enter the debate because the failure to exhaust administrative remedies requires dismissal of the Baileys' complaint.

### III. Conclusion

Based on the foregoing, it is

ORDERED that Defendant Avilla R-XIII School District's Motion for Summary Judgment (Doc. #64) is GRANTED. It is further

ORDERED that Defendant Avilla R-XIII School District's Motion to Strike (Doc. #75) is DENIED AS MOOT.

/s/ *Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE